**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-20771-GAYLES**

**BYRAN ANTONIO FLORES**
**TAMARIS,**

　　　**Petitioner**,

**v.**

**KRISTI NOEM, et al.,**

　　　**Respondents.**

_____/

## **ORDER**

**THIS CAUSE** comes before the Court on Petitioner Byran Antonio Flores Tamaris's

Petition for Writ of Habeas Corpus (the "Petition"). [ECF No. 1]. Petitioner challenges his

detention at Federal Detention Center in Miami ("FDC") without being afforded an individualized

bond determination. *See generally id*. In accordance with 28 U.S.C. § 2243, the Court issued an

Order directing Respondents[1] to show cause why the Petition should not be granted. [ECF No. 5].

Respondents filed a Response in Opposition to the Petition, [ECF No. 7], and Petitioner filed a

reply, [ECF No. 9]. The Court has considered the record, the parties' written submissions, and

applicable law. For the following reasons, the Petition is **GRANTED in part**.

---

[1] The Petition names Kristi Noem, former Secretary of the United States Department of Homeland Security; E.K. Carlton, Warden of FDC Miami Federal Prison; Pamela Bondi, former U.S. Attorney General of the United States; Garret Ripa, Director of Miami Field Office, U.S. Immigration and Customs Enforcement; Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement; and Charles Parra, Assistant Field Office Director for North Krome Service. A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. And in "challenges to present physical confinement," the Supreme Court has made clear that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also id.* at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Accordingly, E.K. Carlton, Warden of FDC Miami Federal Prison, is the only proper Respondent here. The other Respondents shall be dismissed. *See Jackson v. Chatman*, 589 F. App'x 490, 491 n.1

## I.      BACKGROUND

### A.      Petitioner's Immigration History in the United States

Petitioner, a Nicaraguan national, entered the United States in 2022. [ECF No. 1]. He was not inspected or admitted. *Id.* Customs and Border Patrol (CBP) later encountered Petitioner and paroled him on November 17, 2022, pursuant to § 212(d)(5) of the Immigration and Nationality Act ("INA"). [ECF No. 1-2]. His parole had an expiration date of January 19, 2023. *Id.*

On December 10, 2023, Immigration and Customs Enforcement ("ICE") filed a Notice to Appear ("NTA") with the Executive Office for Immigration Review ("EOIR"), placing Petitioner in removal proceedings. [ECF No. 7-1].

On November 2, 2024, Petitioner was arrested for domestic battery in Miami-Dade County. [ECF No. 1-1]. The charges were dropped on December 9, 2024. *Id.*

On January 14, 2026, during a traffic stop, ICE Enforcement Removal Operations detained Petitioner. [ECF No. 7-1]. To date, Petitioner remains in ICE custody at FDC. [ECF No. 1].

### B.      Petitioner's Habeas Petition

On February 5, 2026, Petitioner filed the Petition alleging three counts: Violation of Fifth Amendment Right to Due Process (Count I); Violation of the INA, 8 U.S.C. § 1226 (Count II); and Violation of Bond Regulations (Count III). *Id*. Petitioner argues that his prolonged detention without a bond hearing violates the Fifth Amendment and the INA and its implementing regulations and asks this Court to release him or order an individualized bond hearing. *Id*. On March 30, 2026, Respondents filed a Response in Opposition to the Petition, arguing that Petitioner is not entitled to an individualized bond hearing because Petitioner is detained under 8 U.S.C. § 1225(b)(2), not § 1226(a).[2] [ECF No. 5].

---

[2] Respondents also argue that Petitioner failed to exhaust administrative remedies. Not so. "[E]xhaustion is not required where . . . an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir.

## II.     LEGAL STANDARD

District courts may grant writs of habeas corpus if a person is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a), (c)(3). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In *Zadvydas v. Davis*, the Supreme Court reaffirmed that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" immigration detention. 533 U.S. 678, 688 (2001). And courts in this District have held that this Court has jurisdiction over challenges involving whether a petitioner is detained subject to § 1225(b)(2) or to § 1226(a). *See, e.g.*, *Similien v. Warden, Federal Detention Center, Miami*, No. 26-CV-21739, 2026 WL 900078, at *2 (S.D. Fla. Apr. 2, 2026); *Chamsadine v. Assistant Field Director Warden*, No. 26-21487-CV, 2026 WL 746400, at *1 (S.D. Fla. Mar. 17, 2026).

Section 1225(b) governs the inspection of noncitizen applicants for admission. *See* 8 U.S.C. § 1225(b). An "applicant for admission" is an "alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). Detention for noncitizen applicants for admission under § 1225(b)(2) is mandatory. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (noting § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin"). For that reason, a noncitizen applicant for admission detained under § 1225(b)(2) is ineligible for bond. *See, e.g.*, *Carvajal Bautista v. U.S. Immigr. & Customs Enf't*, No. 1:26-CV-22191, 2026 WL 925590, at *2 (S.D. Fla. Apr. 6, 2026).

---

1982). Importantly, the exhaustion requirement under 8 U.S.C. § 1252(d)(1) is prudential, "not jurisdictional." *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023). Here, since any "subsequent bond appeal to the BIA is nearly a foregone conclusion under *Yajure Hurtado*, any prudential exhaustion requirements are excused for futility." *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Center*, No. 25-24535, 2025 WL 2938369 at *2 (S.D. Fla. Oct. 15, 2025).

3

Section 1226, on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *See Jennings*, 583 U.S. at 289 (emphasis added). "Section 1226(a)'s default rule permits the Attorney General to issue warrants for the arrest and detention of these aliens pending the outcome of their removal proceedings." *Id.* at 281; *see also* 28 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). "The Attorney General 'may release' these aliens on bond" unless they "fall[] into one of the enumerated categories" in § 1226(c) "involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 281 (quoting § 1226(a)(2)). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306; *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Put simply, § 1226(a) "establishes a discretionary detention framework," which is "unlike the mandatory detention framework of § 1225(b)(2)." *See Carvajal Bautista*, 2026 WL 925590, at *2 (quotation marks omitted); *Aguilar Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025). Congress explained the basis for these different detention frameworks when it determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than "noncitizens recently arriving." *See Aguilar Merino*, 2025 WL 2941609, at *3. In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, DHS, interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated,"

4

which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Carvajal Bautista*, 2026 WL 925590, at *2. "Following this interpretation, the BIA held" that an Immigration Judge "had no authority to provide a bond hearing to a noncitizen" who "had been living in the United States for years without admission or parole" because he "is an applicant for admission under § 1225(b)(2)" and "subject to mandatory detention." *Carvajal Bautista*, 2026 WL 925590, at *2; *see also Yajure Hurtado*, 29 I. & N. Dec. at 228 (adopting DHS's new interpretation).

But "District Courts have overwhelmingly rejected the BIA's interpretation." *Carvajal Bautista*, 2026 WL 925590, at *2. That includes courts in this District, many of which have concluded that DHS's abrupt shift in interpretation "runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in" six Circuits over the last three decades. *See, e.g.*, *Aguilar Merino*, 2025 WL 2941609, at *3. Those courts have instead adhered to the interpretation supported by a "plain reading" of § 1225(b)(2) and § 1226(a), *see id.*, which is that the detention of noncitizens encountered when they are already living in the United States "is governed by § 1226(a) and not § 1252(b)(2)," *see Carvajal Bautista*, 2026 WL 925590, at *3. *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–08 (5th Cir. 2026) (adopting DHS's new interpretation); *Avila v. Bondi*, 170 F.4th 1128, 1137–38 (8th Cir. 2026) (same).

## III.   ANALYSIS

The core disagreement between Petitioner and Respondents is whether Petitioner is detained under § 1225(b)(2), and is thus ineligible for bond, or under § 1226(a), which allows for release on bond. This is a hotly contested question that is currently dividing courts throughout the country. This Court, however, has already answered it: noncitizens who have "been living in the

5

United States" for years before being detained are "governed by § 1226(a) and not § 1252(b)(2)." *See, e.g.*, *Carvajal Bautista*, 2026 WL 925590, at \*3. Those noncitizens are "therefore entitled to a bond hearing." *See id.* The Second Circuit agrees, recently holding that "Section 1225(b)(2)(A) does not apply to [] noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." *Cunha v. Freden¸* No. 25-3141-pr, 2026 WL 1146044, at \*2 (2d Cir. Apr. 28, 2026) (noting that "even if the government's newfound interpretation of Section 1225(b)(2)(A) were plausible—and it is not—we would nonetheless reject it based on our obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens.").

The Court sees no reason to depart from that holding here.[3] Respondents detained Petitioner, who has lived in the United States since 2022, after he had an encounter with ICE during a traffic stop, not at the border or the port. That makes Petitioner a noncitizen resident, not an arriving alien or an applicant for admission. As a result, the Petition is governed by § 1226(a) not § 1225(b)(2), and Petitioner is entitled to a bond hearing under § 1226(a).

Accordingly, Petitioner's request for an individualized bond hearing is granted. The Court declines to reach the merits of Petitioner's due process and INA claims regarding the length of his detention as the Court is granting his request for a bond hearing. *See, e.g.*, *Nguyen v. Parra*, 25-

---

[3] The Court acknowledges the recent decisions by the Fifth and Eighth Circuits that agreed with Respondent's position. *See Buenrostro-Mendez*, 166 F.4th at 506–08¸ *Avila*, 170 F.4th at 1137–38. Of course, those decisions are "not binding here, and" they "contradict[] the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at \*2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, they do not persuade this Court. This issue is currently on appeal before the Eleventh Circuit in *Hernandez Alvarez v. Warden, Federal Detention Ctr Miami, et al.*, No. 25-14065 (11th Cir.) and *Cerro Perez v. Assistant Field Dir., et al.*, No. 25-14075 (11th Cir.).

cv-25325, 2025 WL 3451649, at *4 (S.D. Fla. Dec. 1, 2025) (declining to reach the merits of the petitioner's due process claim because it granted the requested relief in other counts but allowing the petitioner to reassert its due process claim if the respondents do not provide a bond hearing). If Respondents do not comply with this Order by providing Petitioner a bond hearing under § 1226(a), Petitioner may renew his claims.

IV.    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED:**

(1) Petitioner Byran Antonio Flores Tamaris's Petition for Writ of Habeas Corpus, [ECF No. 1], is **GRANTED in part**. The Court finds that Petitioner's detention falls under 8 U.S.C. § 1226(a).

(2) Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **May 20, 2026** or otherwise release Petitioner.

(3) **On or before May 22, 2026**, Respondents shall file a Status Report informing the Court of whether Petitioner was given a bond hearing, the outcome of Petitioner's bond hearing, and the status of matters relevant to the Petition.

(4) All Respondents aside from E.K. Carlton, Warden of FDC, are dismissed from this action. *See* 28 U.S.C. § 2243; *Rumsfeld*, 542 U.S. at 439, 447; *Jackson*, 589 F. App'x at 491 n.1.

(5) This case is **CLOSED** for administrative purposes.

(6) The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should any additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of April, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE